# 20-3792

---

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**
**Docket No. 20-3792**

_____

UNITED STATES,

Appellee,

-against-

PETER BRIGHT,

Defendant-Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

_____

**PETITION FOR PANEL REHEARING AND/OR REHEARING *EN BANC***
**FOR DEFENDANT-APPELLANT PETER BRIGHT**

_____

FEDERAL DEFENDERS OF NEW YORK, INC.
APPEALS BUREAU
52 Duane Street, 9th Floor
New York, New York 10007
Tel. No.: (212) 417-8742
    Attorney for Defendant-Appellant
    **PETER BRIGHT**

**DANIEL HABIB,**
 Of Counsel

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ............................................................................................... 1

BACKGROUND .................................................................................................. 3

ARGUMENT ..................................................................................................... 11

    I.   Rehearing Should Be Granted On The Question Whether The District Court Adequately Questioned Prospective Jurors About Bright's Nonconventional Sexuality, A Matter Central To His Defense ......................................................................................... 11

    II.  Rehearing Should Be Granted On The Question Whether The District Court Abused Its Discretion In Admitting Rule 404(b) Evidence Of Bright's Prior Comments About, And Conversations With, Postpubescent Minors. ........................................................... 17

CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Aldridge v. United States*, 283 U.S. 308 (1931) ................................................10, 14

*Berthiaume v. Smith*, 875 F.3d 1354 (11th Cir. 2017) ...............................2, 12, 16

*Ham v. South Carolina*, 409 U.S. 524 (1973) ............................................................11

*Morford v. United States*, 339 U.S. 258 (1950) (*per curiam*)...............................14

*Mu'min v. Virginia*, 500 U.S. 415 (1991) ........................................................10, 13

*Ristaino v. Ross*, 424 U.S. 589 (1976) ...................................................................14

*Rosales-Lopez v. United States*, 451 U.S. 182 (1981)............................. 2, 11, 13, 16

*Turner v. Murray*, 476 U.S. 28 (1986) ....................................................................14

*United States v. Barnes*, 604 F.2d 121 (2d Cir. 1979)............................................13

*United States v. Bates*, 590 F. App'x 882 (11th Cir. 2014) ...................................16

*United States v. Curley*, 639 F.3d 50 (2d Cir. 2011)...................................2, 17, 19

*United States v. Diaz*, 854 F. App'x 386 (2d Cir. 2021) .........................................9

*United States v. Lawes*, 292 F.3d 123 (2d Cir. 2002).............................................13

*United States v. Nekeferoff*, 843 F. App'x 876 (9th Cir. 2021)..............................17

*United States v. Perez-Rodriguez*, 13 F.4th 1 (1st Cir. 2021) .......................2, 12, 15

*United States v. Peterson*, 808 F.2d 969 (2d Cir. 1987)..........................................19

*United States v. Tsarnaev*, No. 20–443 (U.S.).........................................................14

**Statutes**

18 U.S.C. § 2241(c) .................................................................................................18

18 U.S.C. § 2243(a)(1) ............................................................................................18

18 U.S.C. § 2422(a) ....................................................................................................1

N.Y. Penal Law § 130.05(3)(a) .............................................................................18

**Other Authorities**

Open Society Foundations, 10 Reasons To Decriminalize Sex Work, at 6,
   *available* at https://bit.ly/3LXYLhd...................................................................19

**Rules**

Fed. R. App. P. 35(a)(1)(A)................................................................................2, 3

Fed. R. App. P. 35(a)(1)(B)......................................................................................2

Fed. R. Evid. 403 ....................................................................................................18

Fed. R. Evid. 404(b) .......................................................................................*passim*

## INTRODUCTION

Peter Bright petitions for panel rehearing and/or rehearing *en banc* of the summary order affirming his conviction for attempting to entice a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(a). ECF No. 81–1 (attached as Exh. A, and available at 2022 WL 53621).

Bright's trial revolved around a nonconventional sexuality—in his public Twitter profile, he described himself as "Poly/pan/pervy," for "polyamorous, pansexual, and perverted"—that many find offensive. To guard against the risk of juror bias, Bright asked the district court to question venirepersons about their preconceptions concerning "people," like him, "who engage in non-conventional sexual practices." Of particular relevance in this child enticement prosecution, Bright wanted to know whether any venirepersons believed that "someone who engages in" "non-conventional sexual practices... is predisposed to molest children." The court refused, instead posing a truncated question that asked venirepersons merely to self-assess whether "sexually explicit" "evidence" would prevent them from being impartial. In affirming, the panel wrongly applied a

1

heightened legal standard, concluding that Bright had not shown that the failure to pose his proposed questions rendered his trial "fundamentally unfair." That approach conflicts with *Rosales-Lopez v. United States*, 451 U.S. 182, 191 (1981), which demands only a "reasonable possibility that ... prejudice might have influenced the jury" for reversal. *See* Fed. R. App. P. 35(a)(1)(A). The panel's decision also presents a question of exceptional importance—what voir dire is necessary where a party's disfavored sexual orientation is central to the trial proof?—and conflicts with decisions of the First and Eleventh Circuits calling for much more fulsome jury inquiry. *United States v. Perez-Rodriguez*, 13 F.4th 1 (1st Cir. 2021); *Berthiaume v. Smith*, 875 F.3d 1354 (11th Cir. 2017); *see* Fed. R. App. P. 35(a)(1)(B).

Rehearing is also warranted on the question whether the district court abused its discretion in admitting Fed. R. Evid. 404(b) proof of Bright's statements about, and communications with, postpubescent minors, in this prosecution for attempted enticement of (fictitious) 9- and 7-year-olds. The panel's negative answer conflicts with *United States v. Curley*, 639 F.3d 50 (2d Cir. 2011), which requires that Rule 404(b) material be "sufficiently

similar" to the charged offense. *See* Fed. R. App. P. 35(b)(1)(A).

## BACKGROUND

1. In 2019, Bright, a 38-year-old married man and professional journalist with no criminal record, began communicating with a user named "Princessmom" (in fact, an undercover FBI agent) on KinkD, an adult dating app for those with nonconventional sexual identities. Opening Brief (ECF. No. 21) ("OB"), at 10. Princessmom said that she was 35 years old, had been "kinky" for two years, and was "looking for a teacher to teach my kids about the birds and the bees." OB.10. Bright believed that Princessmom was, like him, interested in "age play"—a form of sexual role-playing in which one or both of the participants "pretend[] that they're a different age than what they are; typically, it's younger." OB.7–8, 10–11.

Bright pursued a wide range of kinks—he was in a polyamorous marriage, dated "men, women, transmen, transwomen," and enjoyed BDSM (bondage, domination, sadism, masochism)—but age play was his kink of choice. OB.6–7. His preferred age-play scenario involved a "daddy-daughter" or "daddy-son" dynamic, where Bright played the "daddy" and

3

his adult partner "play[ed] as if they were 11 or 12." OB.7. In this scenario,

Bright, acting as a "daddy," would help his partners "explore their bodies,

understand their bodies, understand his body, understand how sex works,

how to give pleasure to yourself and other people." OB.7. While he was

communicating with Princessmom, Bright was also age-playing, online and

in person, with three other consenting adults. OB.15–16.

Over the course of a month, via online communications and phone

calls, Bright and Princessmom arranged a sexual liaison in which Bright

would "teach" Princessmom's nonexistent "kids"—a 9-year-old "Prince

Charming" and a 7-year-old "little princess." OB.11, 14. The "lessons"

would start with Bright, who was uncircumcised, "teaching" the "kids"

about his foreskin: "[l]et them handle it, see how it pulls back etc." OB.16.

He would also teach the "little princess" to "pleasure herself" by "help[ing]

her discover … that it feels good to rub certain bits" by "touching or

vibrating her clit, putting a finger inside, or maybe a very tiny toy." OB.18.

And he would show her "[h]ow to hold my snake, showing her where the

most sensitive parts of it are, the parts that feel best to lick or rub." OB.18.

4

To Bright, it was "abundantly obvious" that this was "age play" and that Princessmom's "kids" would be consenting adults pretending to be children. OB.11; *see* OB.13–14. However, as the communications progressed, Princessmom sent Bright photos of the "kids" depicting actual children. OB.18–19. Horrified, Bright knew that Princessmom "needed to be reported to the law," so he resolved to "play along" in an effort to secure evidence in which Princessmom inculpated herself, such as a "recording" of her offering her children for sex. OB.19, 20. To that end, he responded to Princessmom's photos with enthusiasm, kept up the sexual dialogue, and agreed to meet Princessmom for a sexual encounter with her and her "kids." OB.20–22.

Bright rendezvoused with Princessmom at a Manhattan park, with his smartphone surreptitiously recording. OB.22–23. Her planned "to meet her and go to her house so I would learn where she lived." OB.22. Bright "wanted to get her to actually invite me, in explicit terms, to do something to hurt the kids, and I would record this, and then I would leave." OB.22– 23. Instead, FBI agents arrested Bright as he and Princessmom walked toward her apartment. OB.24. Bright consented to searches of all of his

5

digital devices and online accounts; those searches yielded no child

pornography and no evidence that Bright had even had explicit

communications with a minor, let alone had sex with one. OB.25–26. Bright

also waived his *Miranda* rights and gave a post-arrest statement, telling FBI

agents that he had begun communicating with Princessmom in the belief

that she was age-playing, but changed gears and attempted to inculpate

and report her once he realized that she was not. OB.26.

2.    Bright's sexual identity was central to his defense, but he feared,

quite reasonably, that jurors would find his nontraditional sexuality

repugnant. Because "nontraditional sexual behaviors are so stigmatized,"

Bright requested that the district court (Castel, J.) question prospective

jurors about their biases and preconceptions regarding kink in general and

age play in particular. OB.27–28. Bright proposed that the court ask:

> You may hear testimony during this trial about non-conventional
> sexual practices and fetishes often referred to as "kink." Specifically,
> you will hear evidence that Mr. Bright engages in a consensual sexual
> practice referred to as age-play. Age-play is a form of roleplaying
> between adults in which an individual acts or treats another as if they
> were a different age.
>
> a. Does any juror believe that someone who engages in such practices

6

or kink is predisposed to molest children?

> b. Does any juror have any preconceived notions about people who engage in non-conventional sexual practices? If so, what are they? Would those notions impair your judgment in this case?

OB.27–28. The district court instead asked the venire, as a group:

> Some of the evidence in this case will involve sexually suggestive or sexually explicit statements and descriptions of conduct, including, but not limited to, nonconventional sexual practices and fetishes, sometimes called kink or kinky stuff and "age-based role play" between adults in which an individual acts or treats another as if they were a different age.

> Is there anything about the nature of the evidence, as I've described it, that would prevent you from being a fair and impartial juror in deciding this case? If so, please raise your hand.

No venirepersons responded. OB.28–29.

> 3.      Pursuant to Rule 404(b), the government moved to admit several

of Bright's public Twitter posts (cherry-picked from a set of 200,000) and

private online communications to prove that he intended to entice

Princessmom's "kids" into sex:

- In May 2009, Bright tweeted: "Admiring the jailbait on the train. rowr."

- In October 2009, he tweeted: "There is an astonishing amount of jailbait on this flight. Looks like some school orchestra or similar. …

7

Jailbait everywhere, and yet my row is old women. There's no justice."

- In a 2010 online chat, in response to a friend's lament that she could only attract romantic attention from a "deli checkout guy who looks like he's about 15," Bright responded, "I would bone a 15 year old girl in an instant," followed by an emoticon of a face with its tongue sticking out, to indicate that he was teasing.

- In a 2011 online chat, while discussing teenage pop singers with his soon-to-be-wife, he joked that a 13-year-old singer was "TOO OLD … lol."

- In a 2012 online chat, he told a friend: "someone who friended me on facebook (I have no idea) posted a picture of his daughter, I'm guessing she's like 13 or something … it's all I can do to not post, 'I'd hit it.'" The friend responded: "hahahahaha … lol."

- In 2013, he tweeted: "I think age-based rape laws (rather than consent-based) are stupid."

- During his post-arrest statement, Bright disclosed that in 2019, he engaged in "flirty" online communications with 17- and 14-year-old sisters, whom he never met. The 17-year-old told Bright that "she sometimes goes to Manhattan and turns tricks," but Bright didn't report this statement to the police because "I can't think there are many people in this world whose lives are improved by having a solicitation charge on their record." The 14-year-old, unsolicited, sent Bright a "suggestive" photo of herself in a t-shirt and panties. Bright told her that he wasn't interested and deleted the photo.

The district court admitted all of this material. OB.31–35.

4. Bright's first trial ended in a mistrial when the jury hung 7–5 for

8

conviction. On retrial, an 11-person jury convicted. The district court

sentenced Bright to 144 months. OB.35. He is serving his sentence and BOP

projects his release date as August 11, 2029. BOP, Inmate Locator,

https://www.bop.gov/inmateloc/ (search by Register Number 76309-054).

5.      Bright appealed. As relevant, he argued that the district court

had failed adequately to question prospective jurors about their biases and

preconceptions concerning people with nontraditional sexual identities,

and had abused its discretion in admitting the Rule 404(b) material. *See* OB

§§ I, II.C. The panel (Lynch, Sullivan, and Menashi, JJ.) affirmed. Exh. A.

As to the voir dire claim, the panel observed that this Court has "never

reversed a conviction for the failure to ask a particular question of

prospective jurors." *Id.* at 3 (citing *United States v. Diaz*, 854 F. App'x 386,

389 (2d Cir. 2021)). "[A]ssuming arguendo that the district court was

required to question jurors about the potential biases that Bright identifies,"

the panel concluded that "the court did, in fact, do so." *Id.* Judge Castel

"described the non-conventional sexual practice that Bright was concerned

about—'age-based role play'—nearly verbatim from his definition of the

9

term, and it asked potential jurors whether evidence involving age play

would 'prevent [them] from being ... fair and impartial.'" *Id.* In the panel's

view, "no greater specificity was needed to 'cover the subject' of prejudice

against age play, which is all the Supreme Court requires." *Id.* at 3–4 (citing

*Aldridge v. United States*, 283 U.S. 308, 311 (1931)). Bright had "not shown

that the district court's failure to elicit the exact information he desired

'rendered [his] trial fundamentally unfair.'" *Id.* at 4 (quoting *Mu'min v.*

*Virginia*, 500 U.S. 415, 425–26 (1991)).

As to the Rule 404(b) claim, the panel concluded that "Bright's prior

statements about his attraction to minors and his distaste for age-based

rape laws, along with his admittedly 'flirty' chats with a 14-year-old, were

'sufficiently relevant and probative evidence' of a key issue in the case:

Bright's intent to engage in sexual activity with real minors and not, as he

asserted at trial, an intent either to engage in such conduct with adults

pretending to be minors or to investigate the abuse of minors." Exh. A, at 7–

8. The panel also upheld the admission of evidence of Bright's

communications with the 17-year-old sister who had engaged in consensual

sex work, reasoning that "evidence concerning Bright's prior decision not to report a sex crime to police was directly relevant to his asserted defense that he intended to gather evidence to assist law enforcement in prosecuting sex offenses." *Id.* at 9.

## ARGUMENT

**I.**      **Rehearing Should Be Granted On The Question Whether The District Court Adequately Questioned Prospective Jurors About Bright's Nonconventional Sexuality, A Matter Central To His Defense.**

On appeal, Bright showed that he was entitled to question prospective jurors on biases relating to his sexuality, as he belonged to a disfavored and stigmatized sexual minority, and that identity was central to his defense. *See* OB § I.B; *Rosales-Lopez*; *Ham v. South Carolina*, 409 U.S. 524 (1973). The panel "assum[ed] arguendo" that such an entitlement existed, but nonetheless affirmed. That erroneous conclusion warrants rehearing, for three reasons.

*First*, the panel determined that the district court had sufficiently "'cover[ed] the subject' of prejudice against age play," but neglected that the potential sources of bias in this case, and thus Bright's proposed jury inquiries, swept far more broadly. Bright was not just an age player, he was

11

a man in a polyamorous marriage who dated "men, women, transmen, transwomen." During its case-in-chief, the government introduced evidence of Bright's far-ranging interests in "kinky filth inside the bedroom," including bondage, domination, sadomasochism, "piss play, squirting, forced orgasms," "[w]atching girls pee, peeing on them, peeing in them," "spanking," and "rimming." OB.46; Reply Brief (ECF No. 54), at 6. Each of these aspects of Bright's identity carried a real risk of juror bias, so each called for voir dire questioning; at a minimum, Bright was entitled to questioning about his status as a bisexual (or, as he put it, "pansexual") man. *See, e.g.*, *Perez-Rodriguez*, 13 F.4th at 31–32; *Berthiaume*, 875 F.3d at 1356.

Bright proposed a question encompassing more than just age play: "Does any juror have any preconceived notions about people who engage in non-conventional sexual practices? If so, what are they? Would those notions impair your judgment in this case?" OB.28. He also proposed a targeted question with obvious pertinence here, namely, whether the venirpersons believed the stereotype long associated with sexual minorities, in particular gay or bisexual men: that they are "predisposed to molest

children." OB.28. *See Perez-Rodriguez*, 13 F.4th at 31.The district court

refused to pose those questions, and the panel did not address those

deficiencies, misconstruing Bright's concern as limited to age play alone.

*Second*, the panel concluded that Bright's claim failed because he had

not shown "fundamental unfairness," the constitutional standard, but

neglected that the nonconstitutional (or supervisory) standard, as

articulated by the Supreme Court and this Court, requires a far lesser

showing for reversal: "a reasonable possibility that ... prejudice might have

influenced the jury." *Rosales-Lopez*, 451 U.S. at 191. *See also, e.g., United States*

*v. Lawes*, 292 F.3d 123, 129 (2d Cir. 2002) ("[A] voir dire may be so

insufficient as to call for a reversal" if the record as a whole shows "a failure

to inquire about, or warn against, a systematic or pervasive bias ... in the

community that would have been cured by asking a question posed by a

party."). The panel never addressed Bright's nonconstitutional/supervisory

claim, mistakenly relying on a constitutional precedent (*Mu'min)* and a pre-

*Rosales-Lopez* decision of this Court (*United States v. Barnes*, 604 F.2d 121,

137–38 (2d Cir. 1979)), to demand proof of fundamental unfairness.

Bright easily satisfied *Rosales-Lopez*'s "reasonable possibility" standard. Relying on expert testimony, judicial decisions, social-science literature, and survey data, he demonstrated the existence of the severe and widespread stigma born by sexual minorities. *See* OB § I.C.1. And it's undisputed that his nonconventional sexual identity was "inextricably bound up with the conduct of the trial." *Ristaino v. Ross*, 424 U.S. 589, 597 (1976). Reversal was therefore warranted.[1]

*Third*, and most fundamentally, this Court's total abdication of appellate supervision over voir dire—the panel noted that this Court has "never reversed a conviction for the failure to ask a particular question of prospective jurors"—flouts Supreme Court guidance and conflicts with the approach of the other Circuits. The Supreme Court has never hesitated to reverse for inadequate voir dire, on either constitutional or supervisory grounds. *E.g.*, *Turner v. Murray*, 476 U.S. 28 (1986); *Ham*; *Morford v. United*

---

[1] The scope of appellate courts' supervisory authority over voir dire and the proper prejudice standard for deficient-voir-dire claims are questions pending before the Supreme Court in *United States v. Tsarnaev*, No. 20–443 (argued Oct. 13, 2021). Accordingly, this Court may wish to reserve decision on this petition pending the Supreme Court's disposition of *Tsarnaev*.

*States*, 339 U.S. 258 (1950) (*per curiam*); *Aldridge*. Nor have the Circuits. *See*

Reply Br. 10–11 (collecting cases).

In the particular context of sexual-orientation bias, both the First and

Eleventh Circuit have made clear that the voir dire here would not pass

muster. In *Perez-Rodriguez*, an attempted enticement prosecution of a gay

man, the First Circuit found inadequate a question more probing than the

one posed here: "Do you feel that you would not be able to render a fair

and impartial verdict based on the evidence and my instructions if the

defendant were homosexual or gay?" 13 F.4th at 31–32. The court of appeals

noted that the case "raise[d] particular concerns about anti-gay bias not

only because the defendant is gay, but because of the graphic sexual nature

of the evidence and the repugnant but unfortunately widespread

prejudicial belief that gay men are likely to sexually abuse children." *Id.* at

31. The First Circuit explained that searching voir dire was therefore

necessary: "Questions probing prospective jurors' actual bias against gay

men—rather than their self-assessment of their ability to be impartial at a

criminal trial where the defendant is gay—would be more useful in

15

identifying jurors who could not be fair and impartial in dealing with the difficult facts of this case." *Id.* at 31–32.

Likewise, in *Berthiaume*, the Eleventh Circuit—applying *Rosales-Lopez*'s "reasonable possibility" standard—reversed a defense verdict in a civil action brought by a gay plaintiff for failure to voir dire on anti-gay bias. 875 F.3d at 1359. In *Berthiaume*, as here, issues of sexual orientation were "'inextricably bound up'" with the trial proof—the suit arose from an alleged domestic battery involving same-sex partners, and most of the plaintiff's witnesses were gay. *Id.* at 1358 (quoting *Rosales-Lopez*, 451 U.S. at 189). And, the Eleventh Circuit acknowledged, the risk of prejudice was "not trivial," because "[w]hile some jurors are not biased based on sexual orientation, some realistically are." *Id.* at 1359. *See also United States v. Bates*, 590 F. App'x 882 (11th Cir. 2014) (reversing gay defendant's conviction for receiving, accessing, distributing, and possessing child pornography for failure to question venirepersons on anti-gay bias).

In short, the panel failed to address the broader of Bright's proposed voir dire questions, wrongly applied a heightened legal standard to his

16

claim, and departed sharply from the approaches of several other Circuits.

II.     **Rehearing Should Be Granted On The Question Whether The District Court Abused Its Discretion In Admitting Rule 404(b) Evidence Of Bright's Prior Comments About, And Conversations With, Postpubescent Minors.**

Rehearing is also warranted on Bright's Rule 404(b) claim. In deeming the government's evidence relevant, the panel glossed over significant distinctions between the Rule 404(b) material and the charged offense, in contravention of *Curley*'s "sufficient similarity" requirement.

For one thing, the Rule 404(b) material concerned postpubescent minors, not the 9- and 7-year-olds Bright that was charged with attempting to entice. Clinicians and sex researchers distinguish among attraction to postpubescent and prepubescent minors for purposes of treatment and diagnostic classification. *See* OB.65 (collecting authorities). Likewise, decisional and statutory law distinguish between older and younger teenagers. For example, in *United States v. Nekeferoff*, 843 F. App'x 876, 880 (9th Cir. 2021), an attempted enticement prosecution where the minor was eight years old, the Ninth Circuit held that the district court abused its discretion in admitting evidence that the defendant had previously had sex

17

with his girlfriend's 15-year-old daughter: "Given the significant differences between that incident and Nekeferoff's present charged conduct—particularly the victims' ages (fifteen versus eight) ... —the limited probative value of this testimony "is substantially outweighed by a danger of ... unfair prejudice." (quoting Fed. R. Evid. 403). Likewise, compare 18 U.S.C. § 2241(c) (statutory sentencing range of 30 years to life for knowingly engaging in a sexual act with a minor under 12) with 18 U.S.C. § 2243(a)(1) (0-15 years for knowingly engaging in a sexual act with a minor from 12-15 years old). Even the government acknowledged that "[i]t is different to attempt to engage in sexual activity with a prepubescent child who really has no ability to resist, as opposed to try[ing] to engage in sexual activity with a teenager." OB.65.

For another thing, the panel implausibly thought that Bright's disinclination to report prostitution by a 17-year-old woman—above New York's age of consent, *see* N.Y. Penal Law § 130.05(3)(a)—meant that he would be less likely to report the sexual abuse of 9- or 7-year-old children. That inference was unsound. Many mainstream advocacy organizations

18

favor decriminalizing consensual sex work, but none of them would countenance the abuse of unconsenting children. To the contrary, some argue that decriminalization protects children by freeing up law enforcement resources: "[J]urisdictions that decriminalize sex work can retain and even strengthen criminal prohibitions on ... the prostitution of minors." Open Society Foundations, 10 Reasons To Decriminalize Sex Work, at 6, *available* at https://bit.ly/3LXYLhd.

By eliding these crucial distinctions, the panel stretched Rule 404(b) past the breaking point and ran afoul of *Curley*, which establishes that a district court abuses its discretion "if [Rule 404(b)] evidence is 'not sufficiently similar' to the charged conduct or if 'the chain of inferences necessary to connect [the] evidence with the ultimate fact to be proved [is] unduly long.'" 639 F.3d at 57 (quoting *United States v. Peterson*, 808 F.2d 969, 974 (2d Cir. 1987)).

19

## CONCLUSION

This Court should grant panel rehearing and/or rehearing *en banc*.

Dated:     New York, New York
               February 20, 2022

                             Respectfully submitted,

                             FEDERAL DEFENDERS OF NEW YORK, INC.
                              APPEALS BUREAU

                             By: /s/ Daniel Habib
                             Attorney for Defendant-Appellant
                                   **Peter Bright**
                             52 Duane Street, 10th Floor
                             New York, New York 10007
                             Tel.: (212) 417-8742

20

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limit of Fed. R. App. P. 35(b)(2)(A) and Fed. R. App. P. 40(b)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this brief contains **3,717** words.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using **Microsoft Word** in **14-point font** in **Palatino Linotype** type style.

/s/ Daniel Habib
Attorney for Defendant-Appellant
**Peter Bright**

Dated:      New York, New York
            February 20, 2022

---

## CERTIFICATE OF SERVICE

I certify that a copy of this brief has been served by ECF on the United States Attorney/S.D.N.Y.; Attention: **ALEXANDER LI, ESQ.,** Assistant United States Attorney, 1 St. Andrew's Plaza, New York, New York 10007.

/s/ Daniel Habib
Attorney for Defendant-Appellant
**Peter Bright**

Dated:      New York, New York
            February 20, 2022

21

# EXHIBIT A

20-3792
*United States v. Bright*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of January, two thousand twenty-two.

PRESENT:  GERARD E. LYNCH,
RICHARD J. SULLIVAN,
STEVEN J. MENASHI,
*Circuit Judges.*

_____

United States of America,

*Appellee,*

v.                                                                                          No. 20-3792

Peter Bright,

*Defendant-Appellant.*

_____

FOR APPELLANT:              DANIEL HABIB, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY.

FOR APPELLEES:              ALEXANDER LI, Assistant United States Attorney (Karl Metzner, Assistant United States Attorney, *on the brief*), *for* Damian

Williams, United States Attorney for the
Southern District of New York, New York,
NY.

Appeal from the United States District Court for the Southern District of
New York (Castel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,
ADJUDGED, AND DECREED** that the district court's judgment is **AFFIRMED**.

Peter Bright appeals from a judgment of conviction entered in November
2020 in the Southern District of New York following a trial in which the jury found
Bright guilty of one count of attempted enticement of a minor to engage in illegal
sexual activity, in violation of 18 U.S.C. §§ 2422(b) and 2. On appeal, Bright
challenges several of the district court's pretrial rulings, which we address in turn.
We assume the parties' familiarity with the facts, procedural history, and issues
on appeal.

Bright first argues that the district court deprived him of an impartial jury
when it, by his account, refused to ask prospective jurors about their possible
prejudices against people who pursue nonconventional sexual practices and
fetishes, including age-based role play – sometimes referred to as "age play" – with

2

sufficient specificity. District courts have broad discretion as to the form and number of questions to be asked during voir dire, *see Ham v. South Carolina*, 409 U.S. 524, 527 (1973); *United States v. Taylor*, 92 F.3d 1313, 1324 (2d Cir. 1996), and this Court "will not interfere with the manner in which" voir dire was conducted unless the trial court committed a "clear abuse of discretion," *United States v. Barton*, 647 F.2d 224, 230 (2d Cir. 1981). As we recently noted in *United States v. Diaz*, we have never reversed a conviction for the failure to ask a particular question of prospective jurors. 854 F. App'x 386, 389 (2d Cir. 2021).

But even assuming arguendo that the district court was required to question jurors about the potential biases that Bright identifies, the record reflects that the court did, in fact, do so. During voir dire, the court described the non-conventional sexual practice that Bright was concerned about – "age-based role play" – nearly verbatim from his definition of the term, and it asked potential jurors whether evidence involving age play would "prevent [them] from being . . . fair and impartial juror[s] in deciding this case." App'x at 136–37. Although Bright argues that the court should have asked more specific questions about Bright's own interest in age play and any perceived connections between age play and pedophilia, no greater specificity was needed to "cover the subject" of prejudice

3

against age play, which is all the Supreme Court requires. *See Aldridge v. United States*, 283 U.S. 308, 311 (1931) (finding reversible error when trial court "failed to ask any question which could be deemed to cover the subject" of racial prejudice); *see also Rosales-Lopez v. United States*, 451 U.S. 182, 185–86 (1981) (finding no error where court asked potential jurors about general bias against "aliens" rather than about the Mexican heritage of that defendant); *Taylor*, 92 F.3d at 1324. Bright has not shown that the district court's failure to elicit the exact information he desired "render[ed] [his] trial fundamentally unfair," and his challenge therefore fails. *Mu'Min v. Virginia*, 500 U.S. 415, 425–26 (1991); *United States v. Barnes*, 604 F.2d 121, 137–38 (2d Cir. 1979) ("The standard set by the [Supreme] Court, which remains the standard today, is that the trial court's discretion must be exercised consistent with the 'essential demands of fairness.'" (quoting *Aldridge*, 283 U.S. at 310)).

Next, Bright challenges the district court's decision to exclude the testimony of Bright's expert regarding the lack of connection between age play and pedophilia. "[W]e review a district court's decision to admit or exclude expert testimony for an abuse of discretion," *United States v. Lee*, 723 F.3d 134, 143 (2d Cir. 2013), and will find such abuse only where "the decision to admit or exclude expert scientific testimony was manifestly erroneous," *United States v. Jones*, 965 F.3d 149,

162 (2d Cir. 2020).

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony and requires, among other things, that such testimony be "the product of reliable principles and methods." "While the proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied, the district court is the ultimate gatekeeper" and must ensure that expert testimony is both reliable and relevant. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal quotation marks and citations omitted).

As the district court noted, although Bright established Dr. Cantor's extensive experience in researching and treating pedophiles, he failed to disclose a reliable methodology supporting Dr. Cantor's proposed testimony about the lack of connection between age play and pedophilia. Indeed, Bright did not provide any details about Dr. Cantor's professional experience counseling patients who engaged in age play, or how he determined whether those individuals were sexually attracted to children. And as Dr. Cantor later admitted at trial, he had never conducted or reviewed any research on age play and had never examined Bright personally. We thus find no abuse of discretion in the district court's

decision to exclude this testimony.

Finally, Bright challenges the admission of certain evidence under Rule 404(b) of the Federal Rules of Evidence. We review the district court's admission of evidence under Rule 404(b) "for abuse of discretion, which we will find only if the [court] acted in an arbitrary and irrational manner." *United States v. Lombardozzi*, 491 F.3d 61, 78–79 (2d Cir. 2007).[1]

Under Rule 404(b), evidence of a prior act is inadmissible to prove a defendant's propensity to commit a charged offense, but may be admissible for other purposes, including proving his intent. We will find evidence admissible under Rule 404(b) so long as it is (1) "introduced for a proper purpose," (2) "relevant to the charged offense," (3) not substantially more prejudicial than probative, and (4) "admitted with a limiting instruction if requested." *United States v. Rutkoske*, 506 F.3d 170, 177 (2d Cir. 2007). Evidence is relevant to the charged offense if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable

---

[1] Some of Bright's admitted statements may not have required consideration under Rule 404(b), but we need not explore that issue further, because the district court did not abuse its discretion in admitting the statements under the more stringent requirements of Rule 404(b).

than it would be without the evidence," including where there is "a similarity or some connection" between the charged conduct and the prior conduct. *United States v. Brand*, 467 F.3d 179, 197 (2d Cir. 2006) (quoting Fed. R. Evid. 401) (internal quotation marks omitted), *abrogated on other grounds by United States v. Cabrera*, 13 F.4th 140, 147 (2d Cir. 2021).

Bright argues that most of the challenged statements – including prior statements that Bright made in private online chats, public Twitter posts, and in his post-arrest statement about private messages with a 14-year-old girl – were irrelevant because they were "insignificant" and "unrepresentative" comments concerning teens rather than serious expressions of sexual interest in pre-pubescent children, Bright Br. at 66; he thus contends that these statements did not cover material "sufficiently similar to the conduct at issue," *id.* at 63 (quoting *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011)). Although Bright suggests that there is no direct connection between this evidence and the crime charged here, "[e]vidence of other acts need not be identical to the charged conduct to show knowledge or intent pursuant to Rule 404(b), so long as the evidence is relevant in that it provides a reasonable basis for inferring . . . intent." *United States v. Cadet*, 664 F.3d 27, 32–33 (2d Cir. 2011). As the district court determined, Bright's prior

7

statements about his attraction to minors and distaste for age-based rape laws, along with his admittedly "flirty" chats with a 14-year-old, App'x at 85, were "sufficiently relevant and probative evidence" of a key issue in the case: Bright's intent to engage in sexual activity with real minors and not, as he asserted at trial, an intent either to engage in such conduct with adults pretending to be minors or to investigate the abuse of minors, *id.* at 74; *see Brand*, 467 F.3d at 197 (finding that defendant's possession of child pornography "made it more probable . . . than it would be without the evidence . . . that [he intended] to . . . engage in illicit sexual activity and to attempt to entice a minor to engage in sexual activity" rather than his "conten[tion] at trial" that he merely "intended to engage" in "some more innocuous" noncriminal act (internal quotation marks and citations omitted)).

Bright further argues that it was error for the district court to admit his post-arrest statement about his discussions with a 17-year-old girl who intimated that she had engaged in prostitution. The government offered this evidence to rebut Bright's assertion that his meeting with the undercover officer was actually motivated by his desire to assist law enforcement in identifying and prosecuting a woman who he believed was exposing children to sexual abuse. Bright argues that the government's purported purpose "was attenuated and weak," and the

8

limiting instruction about that evidence was unclear.  Bright Br. at 67–68.  But

evidence concerning Bright's prior decision not to report a sex crime to police was

directly relevant to his asserted defense that he intended to gather evidence to

assist law enforcement in prosecuting sex offenses.  And this evidence was not

substantially more prejudicial than probative, particularly in light of the court's

instruction that jurors could consider this evidence only for "the limited question

of [Bright's] intent at the time of the crime charged."  App'x at 518.[2]

Bright argues that the passage of time should also weigh against the probity

of his statements, as they occurred between six and ten years before the charged

conduct.  But we recognize no "bright-line rule as to how old is too old" – rather,

we evaluate admission on a case-by-case basis, weighing all evidence "for

relevance and reliability."  *United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997).

Here, all of the statements were reliable, admitted for a proper purpose, relevant

to Bright's intent to commit the charged offense, and more probative than

---

[2] Bright now argues that this instruction should have been more specific, but he did not object to it at trial or request a clarifying instruction, so we review for plain error.  *See United States v. Paulino*, 445 F.3d 211, 216 n.1 (2d Cir. 2006).  Bright fails to show how the asserted lack of specificity "affected his substantial rights or seriously affected the fairness, integrity, or public reputation of [the] judicial proceedings."  *Id.* (internal quotation marks, citation, and alterations omitted).  We therefore find no plain error.

prejudicial – particularly in light of the district court's limiting instructions.  *See*

*Rutkoske*, 506 F.3d at 176–77.  We therefore conclude that the district court did not

err in admitting this evidence.

Accordingly, we **AFFIRM** the judgment of the district court.

> FOR THE COURT:
> Catherine O'Hagan Wolfe,
> Clerk of Court